**IN THE COURT OF APPEALS OF IOWA**

No. 19-0814
Filed May 13, 2020

**IN THE MATTER OF THE ESTATE OF FAE DOREEN BLACK, Deceased.**

**STEVEN JOHNSTON and MICHAEL JOHNSTON,**
     Appellants.

_____

     Appeal from the Iowa District Court for Van Buren County, Shawn R. Showers, Judge.

     Steven and Michael Johnston appeal the district court order denying their claim in probate. **AFFIRMED.**

     Patrick W. O'Bryan, Des Moines, for appellants.

     Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellees.

     Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

This case falls into the old farm idiom: "Beating a dead horse."[1] This marks the third appeal between these parties. *See Franklin v. Johnston* (*Franklin I*), No. 15-2047, 2017 WL 1086205, at *1 (Iowa Ct. App. Mar. 22, 2017) (deciding, among other things, whether a right of first refusal was valid); *see also Franklin v. Johnston* (*Franklin II*), No. 18-0613, 2019 WL 2372315, at *1 (Iowa Ct. App. June 5, 2019) (resolving, after remand, issues about ownership of a dock and shoreline that are not pertinent to this appeal). Steven and Michael Johnston ("the Johnstons") seek specific performance of an "option to purchase" in a 1962 "Easement and Agreement." They claim the terms of that agreement allow them to purchase Van Buren County land owned by the Black Estate ("the Franklins"—the decedent's family name)[2] around a shared lake. In *Franklin I*, the Johnstons elected an unsuccessful path to the same result they seek in this appeal. Here, the district court determined this newly crafted claim on an old issue was time-barred under

---

[1] Defined as "to keep talking about a subject that has already been discussed or decided." *Beat a Dead Horse*, Merriam-Webster, https://www.merriam-webster.com/dictionary/beat%20a%20dead%20horse (last visited Apr. 22, 2020). "There is no linguistic evidence, we are happy to report, suggesting that this idiom has any sort of literal roots; the English-speaking people, so far as we can tell, did not at any point have a practice of actually beating dead horses." *"Like a Pig in Mud" and Other Barnyard Idioms*, Merriam-Webster, https://www.merriam-webster.com/words-at-play/a-whole-barnyard-of-farm-idioms (last visited Apr. 22, 2020).

[2] We use "Franklin" to refer to the opposing party because the landowner, Fae Black, formally Franklin, died and two of her six children are co-executors. All of the previous cases used "Franklin" to refer to the interests of her family.

Iowa Code section 633.410 (2018)[3] and even if it were not, the doctrine of res judicata barred further adjudication. We agree and affirm.

## I. Background Facts and Proceedings.

Fae Black, formerly known as Fae Franklin, died on June 12, 2012. The Johnstons filed a claim in probate of the Black estate on November 15, 2018, seeking to enforce an Easement and Agreement, which contains what they allege is an option to purchase a portion of the estate's land.[4] But we addressed earlier appeals over this same property in *Franklin I* and *II*.[5] The facts developed in the first appeal provide a helpful backdrop:

> The predecessors in title to the properties entered into the easement and agreement allowing for the construction of a dam on the Johnstons' property that resulted in the creation of a 14-acre lake, which spilled onto and covered a portion of both properties. After more than fifty years of enjoyment of the lake by both property owners, the parties are now disputing the extent of each other's rights to access and use the lake, along with disputing the boundary line between the properties.

*Franklin I*, 2017 WL 1086205, at *1. The claims made in the first appeal required that we interpret the language of the 1962 Easement and Agreement. The relevant portion of the document states,

> It is further specifically understood and agreed that in the event [the Franklins] should at any time elect to sell their premises or in any other manner dispose of or alienate the title to their lands that they

---

[3] We reference the 2018 code, as that is when the Johnstons first contacted the court asking for relief in this case. We note the pertinent sections of the Iowa Code were unchanged in 2019—the year the Johnstons filed their formal claim for relief.

[4] On November 15, 2018, the Johnstons wrote a letter captioned "NOTICE OF INTEREST IN PURSUING RIGHTS ASSIGNED BY LEGAL AGREEMENT" to Judge Joel Yates asking for relief, but a formal claim in probate was not filed until March 28, 2019. Both were filed past the Iowa Code section 633.410 deadline for filing claims in probate.

[5] A full recitation of the case history is set out in *Franklin II*, 2019 WL 2372315, at *1–3.

shall and do hereby grant, sell, and convey unto the [Johnstons' predecessors in title] their heirs, successors, administrators or assigns, *the first right and option to purchase* such overflowed area together with a strip of land surrounding said overflowed area not to exceed twenty (20) feet in width from the shoreline of said overflowed area at and for the same price as [the Franklins] receive by way of a bona fide offer for the purchase thereof.

Related to the issue here, in *Franklin I*, the Franklins sued asserting the right of first refusal in the 1962 Easement and Agreement was no longer valid. *Id.* at *2. The Johnstons argued that the contract provided them a "right of first refusal" to purchase the Franklin property encompassing the lake and twenty feet of shoreline. *Id.* We determined that the right of first refusal violated the rule against restraints on the alienation of land and consequently was unenforceable. *Id.* at *8.

While that first appeal theme focused on a "right of first refusal" claim, this third appeal addresses a claim to the same property under an "option to purchase" contract right. But under each theory, the overall relief sought by the Johnstons is the right to obtain the Franklin property. The question now is how many times do the Johnstons get to develop their theme of recovery for the same requested result? The answer is once.

**II. Scope of Review.**

The Johnstons suggest our review is de novo; the Franklins assert the correct standard is for correction of errors at law. We review a trial court's ruling on a contested claim in probate for correction of errors at law. *See* Iowa Code § 633.33; *In re Estate of Melby*, 841 N.W.2d 867, 871 (Iowa 2014).

If the parties challenge the district court's interpretation of the applicable statutes, our review is for the correction of errors at law. *See Van Sloun v. Agans*

*Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010) ("The court reviews issues involving the interpretation of statutes for correction of errors at law.")

### III. Analysis.

**A. Res Judicata.** "The doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion." *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006) (quoting *Colvin v. Story Cty. Bd. of Review*, 653 N.W.2d 345, 348 (Iowa 2002)). "When used in the sense of claim preclusion, res judicata means that further litigation on the claim is barred." *Bennett v. MC # 619, Inc.*, 586 N.W.2d 512, 516 (Iowa 1998). "When used in the sense of issue preclusion, res judicata means that further litigation on a specific issue is barred."[6] *Id.* Here the district court did not identify which specific doctrine it applied. Finding claim preclusion applicable, we focus on that doctrine.

Under the doctrine of claim preclusion, the party must establish three elements: "(1) 'the parties in the first and second action were the same'; (2) 'the claim in the second suit could have been fully and fairly adjudicated in the prior case'; and (3) 'there was a final judgment on the merits in the first action.'" *Spiker*, 708 N.W.2d at 353 (quoting *Arnevik v. Univ. of Minn. Bd. of Regents*, 642 N.W.2d 315, 319 (Iowa 2002)).

> The finality purpose of claim preclusion is well established:
>
> Claim preclusion, as opposed to issue preclusion, may foreclose litigation of matters that have never been litigated. It does not, however, apply unless the party against whom preclusion is asserted had a "full and fair opportunity" to litigate the claim or issue in the first action. A second claim is likely to be barred by claim preclusion

---

[6] Because claim preclusion operates to dispose of the case, we do not address the law on issue preclusion.

where the "acts complained of, and the recovery demanded are the same or where the same evidence will support both actions." A plaintiff is not entitled to a second day in court by alleging a new ground of recovery for the same wrong.

*Arnevik*, 642 N.W.2d at 319 (citations omitted). The general rule is that "[w]hen a valid and final personal judgment is rendered in favor of the plaintiff[,] . . . the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action," in a later action. *Restatement (Second) of Judgments* § 18, at 151–52 (Am. Law Inst. 1982); *see Spiker*, 708 N.W.2d at 354 (concluding that claim preclusion barred a party's defense that could have been raised in an earlier action); *Robbins v. Daniel*, 284 N.W. 793, 798 (Iowa 1939) (concluding when party did not assert affirmative defense, res judicata barred raising the issue in later suit).

I. *Same parties in each action.* The first prong of claim preclusion is met here. The Franklins and the Johnstons are parties in each case. While there were other named parties from each family in the boundary-dispute case that are not a part of this litigation, the overriding family interests are the same and are represented in each case. Both cases are still the Franklins against the Johnstons.

II. *Precluded claim could have been fully adjudicated in the prior case.* The second prong is also met. The Johnstons again ask us to interpret their rights to the Franklin property under the 1962 Easement and Agreement. Yet the Johnstons argue that "the court of appeals did not address whether or not the 1962 easement agreement afforded the Appellants additional rights in addition to their right of first refusal." They maintain they still have an "option to purchase."

Believing they have other theories of recovery, the Johnstons assert their case must go forward.

But the general rule of claim preclusion is that a valid and final judgment on a claim bars a second action on the adjudicated claim or any part of that claim. *Arnevik*, 642 N.W.2d at 319. "Therefore, a party must litigate all matters growing out of the claim, and claim preclusion will apply 'not only to matters actually determined in an earlier action but to all relevant matters that could have been determined.'" *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998) (quoting *Shumaker v. Iowa Dep't of Transp.*, 541 N.W.2d 850, 852 (Iowa 1995)); *accord Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 860 (Iowa 1990). And claim preclusion may preclude litigation on matters the parties never litigated in the first claim. *Arnevik*, 642 N.W.2d at 319. The Restatement (Second) of Judgments teaches

> Among the factors relevant to a determination whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. Though no single factor is determinative, the relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded.

Restatement (Second) of Judgments § 24 cmt. *b*, at 199*; see Pavone v. Kirke*, 807 N.W.2d 828, 837 (Iowa 2011).

The Johnstons do not explain why they failed to raise this new theory in the previous litigation. Alternatively, the Johnstons concede that

> they had in fact asserted the option to purchase throughout litigation, not only outside the courtroom with ongoing bona fide offers relative to their 2012 exercised option, but also in the litigation process on

Appeal to the Supreme Court from the Court of Appeals 2017 decision, their application for further review;[7] and again at the 2018 remand trial.

*See B & B Asphalt Co., v. T.S. McShane Co.*, 242 N.W.2d 279, 286 (Iowa 1976) ("An adjudication in a former suit between the same parties on the same claim is final as to all matters which could have been presented to the court for determination.").

The courthouse door does not remain open to test alternative theories in the same case on different days. Claim preclusion requires that all "eggs in the basket" be tested at one time otherwise, as in this case, litigation would never end. Thus the courts have resolved the Johnstons' quest to enforce their rights to the Franklin property.

III. *Final judgment on the merits in the first action.* In *Franklin I*, we interpreted the 1962 Easement and Agreement to not allow the Johnstons a purchase right to the Franklin property. 2017 WL 1086205 at *6–8. The Johnstons appealed to the Iowa Supreme Court, and further review was denied. The law of the case is established. *Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006) (finding once further review is denied and the appellate court decision is final, that decision is the law of the case). Further steps to interpret the easement are futile.

**B. Statute of Limitations.** Finally, because the case is barred under the doctrine of claim preclusion, we do not extensively address the Johnstons' statute-

---

[7] In the November 2018 letter to Judge Yates, with regard to the Iowa Supreme Court denying further review of *Franklin I*, the Johnstons note, "[W]e are also convinced that the Supreme Court declined to review our appeal only because the OPTION *had not yet been timely argued* in litigation prior to that appeal." (Emphasis added.)

of-limitations arguments. The Johnstons argue the statute of limitations in Iowa Code section 633.410 does not apply to their claim because the option to purchase is "akin to a mortgage, pledge or lien" upon the property so that Iowa Code section 633.414 applies to allow the claim. *See* Iowa Code § 633.414 ("Nothing in sections 633.410, 633.412, and 633.413 shall affect or prevent any action or proceeding to enforce any mortgage, pledge, or other lien upon property of the estate."). But we note that the Johnstons' failure to cite any supporting authority related to the application of Iowa Code section 633.414 to these facts prohibits our review of that issue. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). And they concede that their claim in probate, if treated as such, would be barred under Iowa Code section 633.410.[8]

## IV. Conclusion.

We affirm the district court ruling dismissing the Johnstons' claim in probate based on the doctrine of claim preclusion.

**AFFIRMED.**

---

[8] Iowa Code § 633.410(1) provides,

> All claims against a decedent's estate, other than charges, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, are forever barred against the estate, the personal representative, and the distributees of the estate, unless filed with the clerk within the later to occur of four months after the date of the second publication of the notice to creditors or, as to each claimant whose identity is reasonably ascertainable, one month after service of notice by ordinary mail to the claimant's last known address.

The affidavit of second publishing of the notice was filed July 27, 2012. On December 12, 2012, the Johnstons received notice of probate.