**IN THE COURT OF APPEALS OF IOWA**

No. 15-1249
Filed April 27, 2016


**AMANDA KERBER, MELISSA KERBER, AND JEREMY KERBER,**
    Plaintiffs-Appellees,

**vs.**


**MARIE EISCHEID, MARGUERITE NIELSEN, TERESA SMITH,**
**ANNETTE FIRKUS, KATHLEEN KASPARBAUER, and MARY SMITH,**
    Defendants-Appellants.
_____


Appeal from the Iowa District Court for Carroll County, Kurt J. Stoebe,

Judge.


Six siblings appeal the district court's decision to award a one-seventh

interest in their deceased mother's trust to the children of their deceased sister.

**AFFIRMED.**



R. Scott Rhinehart of Rhinehart Law, P.C., Sioux City, for appellants.

James R. Van Dyke and Aaron W. Ahrendsen of Eich, Van Dyke, Werden

& Steger, P.C., Carroll, for appellees.



Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Six siblings appeal the district court's decision to award a one-seventh interest in their mother's trust to the children of their deceased sister. We are able to discern four distinct arguments. First, they argue any claim to an interest in the trust is barred by the one-year statute of limitations set forth in Iowa Code sections 633A.3108 and 633A.3109 (2013). Second, they argue there was not sufficient evidence to support the conclusion that two of the siblings—Marie Eischeid and Marguerite Nielsen—breached their fiduciary duties as their mother's conservators by amending the beneficiaries of her trust. Third, they argue proper notice of the opening of the mother's estate and the amended trust was given and the district court's ruling to the contrary circumvents the established notice provisions of Iowa Code section 633.304. Fourth, they argue the district court's award of a one-seventh interest in the trust was improper because the trust itself was an indispensable party to the litigation. We find the district court's decision on the first issue that the conservators engaged in self-dealing in conflict with their fiduciary duty to be correct, the issues of notice and undue influence need not be reached, and the indispensable party claim was not preserved for our review. We therefore affirm.

**I.  Background Facts and Proceedings**

When Teresa E. Kasparbauer passed away on April 11, 2012, she was survived by seven of her eight children. Together, those seven comprise the named defendants in this case. Six of the seven are also appellants (the children). Three of Teresa's grandchildren—the children of Shirley, Teresa's deceased eighth child—are the plaintiffs and appellees (the grandchildren). In its

most simplified terms, this case involves a dispute over the distribution of Teresa's assets following her death. The grandchildren maintain they are collectively entitled to the share that would have gone to their deceased mother, based upon the contents of the revocable living trust Teresa established and amended during her lifetime. The children maintain the grandchildren are entitled to nothing, either because the final amended and substituted version of Teresa's revocable living trust cutting down the list of intended beneficiaries was valid or, in the alternative, because the grandchildren's legal claims before the district court were brought after the expiration of the statute of limitations applicable to trusts and did not name the trust as a party to the litigation.

## A. The November 1, 1994 Trust

Teresa first executed a declaration of revocable living trust (trust) on November 1, 1994. The trust was prepared by her attorney, Barry Bruner, and provided that each of her eight children would receive equal shares of her assets upon her death. The relevant language setting forth the equal distribution scheme was contained in article IV(C)(1):

> Subject to subparagraph 2 below, all the rest, residue and remainder of my property, of whatever the same may consist and wherever the same may be located, I give, devise and bequeath to my eight children, namely Teresa Smith, Marie Eischeid, Annette Firkus, Marguerite Nielsen, Mary Smith, Kathleen Kasparbauer, Shirley Kerber and Paul H. Kasparbauer, the same to be theirs equally, share and share alike.

The equal distribution scheme of the trust was subject to several conditions, including a life estate in her husband and options to purchase farm property in favor of three of the couple's children—Paul, Annette, and Shirley. Teresa, Marie, Marguerite, Mary, and Kathleen were given no such option.

### B. The August 31, 2004 Amended Trust

Teresa's original trust remained unchanged for nearly ten years. Then, after her husband passed away, she executed an amended and substituted declaration of revocable living trust (2004 amended trust) on August 31, 2004. As before, she was assisted by Bruner, her attorney. The 2004 amended trust removed language related to her husband's life estate and added language to article IV(C)(1) to account for the possibility that one or more of her children might also predecease her. In the 2004 amended trust, article IV(C)(1) read as follows:

> Subject to subparagraph 2 below, all the rest, residue and remainder of Trustor's property, of whatever the same may consist of and wherever the same may be located, shall pass to my eight children, namely Teresa Smith, Marie Eischeid, Annette Firkus, Marguerite Nielsen, Mary Smith, Kathleen Kasparbauer, Shirley Kerber and Paul H. Kasparbauer, the same to be theirs equally, share and share alike. If a child predeceases me, his or her share shall pass equally to his or her children. If a child predeceases me and has no children, his or her share shall pass equally to his or her surviving siblings.

The 2004 amended trust retained the language granting exclusive options to Paul, Annette, and Shirley.

### C. The Two 2006 Amendments to the Amended Trust

In a span of four months during 2006, Teresa made two amendments to the language of the 2004 amended trust. According to the testimony of Bruner, these amendments were made at a time when Teresa and two of her daughters—Marie and Marguerite—were "on the outs." The amendments added language unfavorable to Marie and Marguerite while simultaneously adding additional language favorable to Paul and Shirley.

First, on March 17, 2006, Teresa amended the language of article IV(C)(1) as follows:

> That Marie Eischeid's share shall pass to her two sons, . . . in equal and undivided shares, share and share alike.
>
> That Marguerite Nielsen's share shall pass to her three children, . . . in equal and undivided shares, share and share alike.
>
> That Paul H. Kasparbauer shall receive all the livestock and machinery on the "home farm" near Templeton, Iowa, that I die owning an interest in.
>
> That Shirley Kerber shall receive all the livestock on the "north place" near Breda, Iowa, that I die owning an interest in.

The amendment further stated that Shirley "shall have life use of the farmstead and twenty acres pasture on the 'north place' near Breda, Iowa."

Four months later, on July 31, 2006, Teresa revoked the first 2006 amendment and amended the language of article IV(C)(1) for a second time that year. The only significant difference between the second amendment and the first was that Teresa removed the language unfavorable to Marguerite. The language unfavorable to Marie remained intact.

## D. The June 25, 2008 Second Amended Trust

On June 25, 2008, Teresa executed a second amended and substituted declaration of revocable living trust (2008 amended trust). Once again, she was assisted by her attorney, Bruner. In the 2008 amended trust, the language of article IV(C)(1) reverted back to its terms prior to the two 2006 amendments:

> Subject to subparagraph 2 below, all the rest, residue and remainder of Trustor's property, of whatever the same may consist of and wherever the same may be located, shall pass to my eight children, namely Teresa Smith, Marie Eischeid, Annette Firkus, Marguerite Nielsen, Mary Smith, Kathleen Kasparbauer, Shirley Kerber and Paul H. Kasparbauer, the same to be theirs equally,

share and share alike.  If a child predeceases me, his or her share shall pass equally to his or her children.  If a child predeceases me and has no children, his or her share shall pass equally to his or her surviving siblings.

However, the 2008 amended trust retained most of the 2006 language favorable to Paul and Shirley, again declaring that Paul "shall receive any remaining livestock and machinery on the 'home farm' near Templeton, Iowa," and Shirley "shall receive any remaining livestock on the 'north place' near Breda, Iowa."  The 2008 amended trust did not provide for Shirley's life use of the "north place."

Article IV(A)(4) of the 2008 amended trust provided that "[d]uring [Teresa's] lifetime, Trustor or Conservator may amend or revoke this Declaration in whole or in part."

### E.  Shirley's Death

Shirley passed away on February 19, 2010.  At the time of her death, the 2008 Amended Trust provided that her share of the trust would pass to her children, Amanda, Melissa, and Jeremy Kerber.

### F.  The June 7, 2010 Will

Four months after Shirley's death, on June 7, 2010, Teresa reaffirmed her estate plans in a last will and testament (will), which began with the preliminary declaration "I have deliberately made provision for all my children through the Article and terms of the Teresa E. Kasparbauer Revocable Living Trust dated November 1, 1994 as amended by my Amended and Substituted Declaration of Revocable Living Trust dated June 25, 2008 and amendments thereto."  The will

also contained a pour-over provision ordering that unaccounted-for portions of her estate be added to the trust according to the same terms.

## G. The October 12, 2011 Voluntary Petition for Guardianship and Conservatorship

Following her execution of the June 7, 2010 will, Teresa's health declined. She spent a significant amount of time transitioning in and out of hospitals and nursing facilities. Following an early-October hospital stay in 2011, Marie and Marguerite—the two daughters whose shares had been temporarily taken from them and given to their children by Teresa's 2006 amendments—approached Bruner, Teresa's attorney. As a result of their action, Bruner created a voluntary petition for appointment of guardian and conservator (voluntary petition) for Teresa. It was filed on October 12, 2011. The underlying premise of the voluntary petition was that Teresa was "unable to care for [her] personal safety . . . [or] to make, communicate, or carry out important decisions concerning [her] financial affairs." The voluntary petition named Marie and Marguerite joint guardians and conservators of Teresa's affairs. No power of attorney was executed. Teresa's signature on the voluntary petition was her last official act regarding her property.

## H. The March 3, 2012 Third Amended Trust

Less than five months after they were named guardians and conservators of Teresa's affairs, Marie and Marguerite executed a third amended and substituted declaration of revocable living trust (2012 amended trust). They did so using a new attorney and apparently based on their authority as conservators granted under the 2008 amended trust. Teresa was hospitalized at the time,

suffering from congestive heart failure and pneumonia, and she was not shown a copy of the document before it was signed. Both Marie and Marguerite testified that the third amended trust was created at the behest of their mother, who repeatedly asked them to "fix" or "take care of" the trust.

While the third amended trust was identical to the prior versions in many respects, it had several conspicuous changes affecting Paul and Shirley. First, Marie and Marguerite appointed themselves first and second successor trustees in place of Paul, who had been named successor trustee in all prior versions and had been the only person named for that role since the 2004 amended trust was executed. Second, Marie and Marguerite rewrote article IV(C)(1) and added a new article IV(C)(2) to explicitly exclude Paul and Shirley from the list of beneficiaries:

> 1. No provision is made for Paul H. Kasparbauer or Shirley G. Kerber as they have received more assets than they would be entitled to by virtue of their conduct. Paul H. Kasparbauer has failed to account to me or the beneficiaries under the Paul A. Kasparbauer Revocable Living Trust.
> 2. Subject to subparagraph 3 below, all the rest, residue and remainder of the Trustor's property, whatever the same may consist of and wherever the same may be located, shall pass to my remaining six daughters, namely Teresa Smith, Marie Eischeid, Marguerite Nielsen, Annette Firkus, Kathleen Kasparbauer, and Mary Smith. If a child predeceases me her share shall pass equally to her spouse. If a child predeceases me and has no spouse, her share shall pass equally to her surviving children. If a child predeceases me and has no spouse or children, her share shall pass equally to her surviving sisters.

The 2012 amended trust also removed the favorable language giving livestock and machinery to Paul and Shirley.

As a direct consequence of excluding Paul and Shirley as beneficiaries of their mother's estate, Marie and Marguerite increased the remaining

beneficiaries' shares—including their own—from a one-eighth share to a one-sixth share. They neither requested nor received court permission for their actions. *See* Iowa Code § 633.155 (2011) ("No fiduciary shall in any manner engage in self-dealing, except on order of court after notice to all interested persons, and shall derive no profit other than the fiduciary's distributive share in the estate . . . .").

## I. Teresa's Final Days and Death

Four days after the third amended trust was filed, on March 7, 2012, Marie executed three documents entitled "Indemnity for Lost Instrument for Certificates of Deposit." Marie was issued money orders worth approximately $50,000, which she deposited to the trust.

Teresa died a month later, on April 11, 2012. The grandchildren were aware of Teresa's death and attended her funeral.

A petition for probate of Teresa's will was filed on June 1, 2012. Marie signed the petition and nominated Thomas Smith, a Wisconsin resident, to serve as executor without bond. The district court appointed Smith on June 5, 2012.

An affidavit of mailing was filed on June 14, 2012, stating Teresa's will, notice of probate of will, and trust were mailed to the grandchildren at their father's address in Carroll, Iowa. The grandchildren testified they never received the notice. Amanda and Jeremy did not live with their father, Kent, at the time; Amanda lived in Ames and Jeremy lived in Emmetsburg, where each attended college. Only Melissa, who was still a minor, lived with her father at the address to which the notice was mailed.

Notice of the probate of the will, appointment of executor, and notice to creditors was published in a Carroll, Iowa newspaper on June 12 and 19, 2012. The grandchildren testified they did not see the legal publications.

On August 17, 2012, Marie deposited more than $300,000 in life insurance policy proceeds to the trust. A portion of those proceeds had been payable to Shirley up until the day before Teresa's death, when Marie changed the policy beneficiary to name the trust rather than Shirley.

The grandchildren did not file any claims in the estate, and the estate closed on September 6, 2012.

**J. Legal Proceedings**

On February 4, 2014, the grandchildren sued their mother's seven siblings. Their petition at law alleged four counts: breach of fiduciary duty and confidential relationship against conservators Marie and Marguerite; lack of testamentary capacity and undue influence; tortious interference with inheritance; and lack of notice of trust. They asked the district court to award them the share of Teresa's assets they would have received prior to the third amended trust and to place a constructive trust on the assets to be distributed to the beneficiaries so as to protect their rights.

The children moved to dismiss the petition, but the district court denied the motion. In doing so, the district court concluded the grandchildren had standing to sue because they would have inherited Shirley's share of the trust under the terms of the trust prior to the final amended version. The district court also rejected the children's argument that the action was barred by the one-year statute of limitations for proceedings to contest the validity of revocable trusts set

forth in Iowa Code sections 633A.3108 and 633A.3109. The district court held the applicable statute of limitations was instead the five years for fraud, as set forth in section 614.1(4).

A bench trial took place on February 17 and 18, 2015. The district court heard testimony from attorney Barry Bruner; children Paul Kasparbauer, Marie Eischeid, Marguerite Nielson, Teresa Smith, Annette Firkus, and Mary Smith; grandchildren Amanda Kerber, Jeremy Kerber, and Melissa Kerber; and others. At the end of the trial, Paul's attorney moved for dismissal of the petition against his client. The grandchildren did not resist the motion, and it was granted by the court.

The district court issued a decree on March 5, 2015, finding that Marie and Marguerite had engaged in self-dealing when they used their positions as guardians and conservators to amend Teresa's inter vivos trust. The district court found that, although Marie and Marguerite were granted broad authority, their negation of bequests to Paul and Shirley was not expressly authorized and constituted a significant conflict between their personal and fiduciary interests. The district court again emphasized that the one-year statute of limitations was inapplicable because the grandchildren's action was against individuals in their capacities as guardians and conservators, not against the trust or any individual in her capacity as trustee. On that point, the district court had the following to say:

> Marguerite and Marie were guardians and conservators first. They abused these offices to gain the power of trustee. This action was not approved by the court. . . .
> The offices of guardian and conservator impose solemn duties. They include safeguards against self-dealing. Here, the

> very basis of the petition for guardianship and conservatorship was Teresa's assertion that she lacked the ability to manage her affairs. Her mental situation declined. She relied on Marie and Marguerite to protect her. Marguerite and Marie failed. Instead, Marguerite and Marie sought to alter Teresa's testamentary scheme to what they believed was fair.

The district court also found Teresa had been unduly influenced by Marie and Marguerite to the extent she consented to the change in trust beneficiaries[1] and that the notice given to the grandchildren was ineffective because they did not actually receive it.

The district court awarded the grandchildren the share that would have gone to their mother Shirley[2] and held that all assets remaining in Teresa's Trust were subject to a constructive trust so as to protect the grandchildren's interests, along with any assets already distributed to a beneficiary, which would have constituted an unjust enrichment to the beneficiary.

Marie, Marguerite, Teresa, Annette, Kathleen, and Mary now appeal.

## II. Standard of Review

The parties appear to agree that their case is in equity as a matter of probate, and that our review is therefore de novo.[3] However, the grandchildren's petition is captioned "petition at law," and the trial proceeded as a law action

---

[1] The district court rejected the grandchildren's argument Teresa was subject to undue influence in her execution of the petition for guardianship and conservatorship.

[2] The district court's decree initially granted judgment of a one-eighth share, which was later increased to a one-seventh share after the grandchildren filed a motion to amend the judgment. The basis for the increase was the fact Paul was no longer a beneficiary and had already settled his own claim with the other children regarding his share. Thus, Shirley's share was ultimately one of only seven, rather than one of eight as originally intended.

[3] In addition to the four arguments we discuss below, the children also presented a fifth in their reply brief—that the district court improperly granted Shirley's children an equitable remedy in a law action. However, we do not consider matters raised for the first time in a reply brief. *See State v. Terry*, 569 N.W.2d 364, 369 (Iowa 1997).

before the district court with bifurcated rulings on objections. Thus, our review is for correction of errors at law. *See Arnevik v. Univ. of Minn. Bd. of Regents,* 642 N.W.2d 315, 318 (Iowa 2002). The district court's findings have the effect of a special verdict and are binding on the reviewing court if supported by substantial evidence. *Id.*; *see also* Iowa R. App. P. 6.907. A finding of fact is supported by substantial evidence "when a reasonable mind would accept it as adequate to reach a conclusion." *Arnevik*, 642 N.W.2d at 318 (citation omitted). Finally, while we are not bound by the district court's legal conclusions, we will construe its "findings broadly in favor of upholding the judgment." *Id.*

We also review issues of statutory interpretation for correction of errors at law. *State v. Wolford Corp.*, 689 N.W.2d 471, 473 (Iowa 2004).

To the extent the district court tried certain claims in equity, our review is de novo. *See In re Receivership of Mt. Pleasant Bank & Trust Co.*, 526 N.W.2d 549, 553 (Iowa 1995). When conducting de novo review, we give the trial court's findings weight although we are not bound by them. *Id.*

## III. Argument

The children raise a number of arguments on appeal, and so we address each in turn.

### A. Application of Limitations Period under Iowa Code Section 633A.3108

First, the children argue that the grandchildren were "put on notice" of possible legal claims related to Teresa's trust because they were aware of their grandmother's death. According to the children, because Teresa's grandchildren attended her funeral, they should have put two and two together and made a

timely inquiry into her estate planning. In support of this argument, the children direct us to the language contained in current Iowa Code sections 633A.3108 and 633A.3109.

The grandchildren correctly point out that the most recent versions of those sections have no bearing on this case. Instead, we must look to Iowa Code section 633A.3108 (2011), the statutes' combined predecessor, which was in effect at the time of Teresa's death on April 11, 2012.[4] Entitled "Limitation on contest of revocable trust," the relevant statutory language provides that:

> Unless notice is given as provided in section 633A.3109, the following provisions shall apply:
> 1) Unless previously barred by adjudication, consent, or other limitation, a proceeding to contest the validity of a revocable trust must be brought no later than one year following the death of the settlor.
> 2) Unless the trustee is a party to a pending proceeding contesting its validity, on or after the date six months following the death of the settlor, the trustee of a revocable trust may assume the trust's validity and proceed to distribute the trust property in accordance with the terms of the trust, without liability for so doing.

Iowa Code § 633A.3108 (2011).

Notwithstanding the confusion over the relevant code year, the children argue that any claim the grandchildren may have had against them related to Teresa's revocable trust was time-barred after the one-year statute of limitations expired in April 2013. We agree with the district court that the grandchildren's action for breach of fiduciary duty was not brought to contest the validity of a

---

[4] The first iterations of the currently-existing statutory sections 633A.3108 and 633A.3109 were established in 2012, and are by the express terms of the legislation only applicable to trusts of settlors who died on or after July 1, 2012. *See* 2012 Iowa Acts ch. 1123, §§ 19, 20, 32(3).

revocable trust.[5]  Instead, they filed a petition at law against individuals, premised on the theory that Marie and Marguerite had engaged in tortious conduct when they capitalized on their new positions as guardians and conservators to fraudulently replace Teresa's 2008 amended trust with a new one that enhanced their own financial benefit at the expense of their infirmed mother's wishes.  As a result, we agree with the district court's conclusions that section 633A.3108 was inapplicable to the grandchildren's tort claim and that the applicable statute of limitations was instead the five years set forth in section 614.1(4), which applies to causes of action "founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud . . . , and all other actions not otherwise provided for . . . ."

## B.  Marie and Marguerite's Breach of Fiduciary Duty

Next, the children argue the 2012 amended trust is valid because Teresa instructed Marie and Marguerite to create and sign the document on her behalf. In support of this argument, the children first point to Iowa Code section 633A.3103 and claim it authorized them, as trustees, to amend the revocable trust.  But that argument places the cart before the horse, because it was only after Marie and Marguerite had named themselves successor trustees in the 2012 amended trust that they purportedly gained the power of trustee.  The prior version of the trust included article IV(A)(4), providing that during Teresa's lifetime, "Trustor or her Conservator may amend or revoke this Declaration in whole or in part."  So the question is not whether Marie and Marguerite, as

---

[5] While the grandchildren sought to invalidate the conservatorship and the 2012 amended trust in their claim alleging undue influence, that claim was not the basis for the relief provided in the district court.

conservators, had the power to amend the trust—it appears they did—but whether they exercised that power in conflict with their fiduciary duties to Teresa.

From the time Marie and Marguerite were appointed as guardians and conservators, they owed Teresa a fiduciary duty because "[t]he provisions of [Iowa's] probate code applicable to all fiduciaries shall govern the appointment, qualification, oath and bond of guardians and conservators." Iowa Code § 633.633. Furthermore, as guardians and conservators, Marie and Marguerite may be "held personally liable for actions or omissions taken or made in the official discharge of [their] duties," so long as those actions or omissions constitute a "breach of fiduciary duty imposed by th[e] probate code." Iowa Code § 633.633A.

The children point to Iowa Code section 633A.3101 for the proposition that a competent settlor may direct the actions of a trustee and claim there was no breach of fiduciary duty because "[a]s long as [Marie and Marguerite] were following [Teresa's] instructions, they fulfilled their fiduciary obligations to her." But therein lies the rub. The suggestion Teresa was competent is belied by the evidence supporting the need for a conservatorship and the medical records describing Teresa's dementia. The only evidence Teresa had instructed Marie and Marguerite to amend the trust was their testimony, and the district court made explicit credibility findings against Marie and Marguerite. Even then, their testimony only described vague instructions attributed to Teresa to "fix" or "take care of" the trust, as opposed to instructions to change the beneficiaries.

Upon consideration of these issues, the district court found:

The record is clear that Teresa's mental capacity was deteriorating significantly by the time Bruner prepared the Petition for Appointment of guardian and conservator. The hospital and nursing home records establish that Teresa was confused at best. She made contradictory statements regarding her children. She did not know who they were at times. She was diagnosed as suffering from dementia. Even the petition misstates her estate which was inventoried at $452,731.03.

There were numerous warning signs that Teresa was under the influence of her guardians and conservators. She abruptly changed attorneys. Her estate plan, which had been largely consistent with that of her deceased husband despite several minor revisions, changed dramatically to favor her guardians and conservators. The guardians and conservators were antagonistic to [Paul] and demonstrated their dislike for [Shirley's children] at trial.

. . . .

The fact that the guardians and conservators had powers granted in a trust does not diminish their obligation to exercise their fiduciary duties as guardians and conservators. . . .

. . . .

There is a preponderance of the evidence that it was not Teresa's desire, while she was competent, to exclude [the grandchildren]. The prejudice of Marie and Marguerite and most of the other defendants against [them] was obvious. The changes made to the trust in 2012 were to achieve those goals. Teresa's ability to express and defend her desires had been ravaged by age and infirmity. [6]

Upon our review for correction of errors at law, we find substantial evidence supports the district court's conclusion that Marie and Marguerite breached their fiduciary duties as guardians and conservators when they created

---

[6] The district court also found that Teresa was subject to undue influence when the guardians and conservators executed the 2012 amended trust because her mental state had deteriorated and she did not consent to the document. However, because the district court found the issues of Teresa's consent and the undue influence claim to be moot in light of its ruling on the issue of breach of fiduciary duty, we need not address whether the undue influence claim was barred by the one-year statute of limitations set forth in Iowa Code section 633A.3108 or whether the district court's finding of undue influence was correct. To the extent the district court's ruling discusses both issues together, we affirm the findings as they relate to Marie and Marguerite's breach of fiduciary duty.

the 2012 Amended Trust. The record provides more than enough support to reach the conclusions of the district court.

## C. Notice under Iowa Code Section 633.304

Next, the children argue the district court's ruling that the grandchildren did not receive proper notice circumvented Iowa Code section 633.304 ("Notice of probate of will with administration."). More specifically, the children argue the statutory language establishes what constitutes proper notice and that whether or not the intended recipients actually receive the notice is irrelevant.

The district court specifically noted that because it had already granted relief to the grandchildren, no further remedy was necessary based upon the issue of sufficiency of the notice. Because we have already upheld the district court's findings regarding breach of fiduciary duty, we decline to engage in review of a secondary issue that does not independently affect the court's order awarding the grandchildren relief.

## D. Whether the Trust was an Indispensable Party to the Lawsuit

Finally, the children argue the lawsuit should have been dismissed pursuant to Iowa Rule of Civil Procedure 1.201 because the trust itself was not sued despite the fact it was an indispensable party to the lawsuit. The rule states:

> Every action must be prosecuted in the name of the real party in interest. But an executor, administrator, conservator, guardian, trustee of an express trust, or a party with whom or in whose name a contract is made for another's benefit, or a party specially authorized by statute may sue in that person's own name without joining the party for whose benefit the action is prosecuted. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party . . . .

Iowa R. Civ. P. 1.201.

The children have not preserved this argument for appellate review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "'It is not a sensible exercise of appellate review to analyze facts of an issue 'without the benefit of a full record or lower court determination.'" *Id.* (alteration and citation omitted). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.* Such motions are generally filed pursuant to Iowa Rule of Civil Procedure 1.904(2), formerly numbered as Rule 179(b). *See id.*; Iowa R. Civ. P. 1.904.

While it is true the children raised the issue early on in this case as an affirmative defense to the grandchildren's petition at law, the district court never actually ruled on the issue following trial. The children argue they should be excused from the normal requirement that they file a motion requesting a ruling on the issue because they "could not afford another disastrous 'procedural' ruling based upon this little known 'quirk' in Iowa law." We are not convinced. If the children wished to preserve the issue for our review, then they were obligated to file a motion requesting that the district court rule on it first. They did not do so.

## IV. Conclusion

For each of the reasons stated above, the district court's decision to award Shirley's children a one-seventh interest in their grandmother's trust is affirmed.

**AFFIRMED.**